HARRIET N. FENDERSON, In Equity

*vs.*

FRANKLIN LIGHT & POWER CO.

Franklin.    Opinion April 16, 1921.

*An appeal from a decree of a single Justice in determining the value of the shares
of a minority stockholder, cannot be taken to the Law Court, but shall be heard
at the next term of the Supreme Judicial Court in the county where proceedings
are pending. A vote of the majority of stockholders to sell property and
franchises of the corporation, without authority of the Public Utilities
Commission, or without its subsequent approval, the sale never having
been consummated, does not entitle a dissenting minority stock-
holder to have the value of his shares determined and paid for.*

Bill in equity brought under provisions of R. S., Chap. 51, Secs. 60 to 71, both
inclusive, to have the value of the shares of a minority stockholder deter-
mined when such stockholder has dissented from the majority vote to sell
the entire property and franchises of a corporation. The majority voted
to sell but the sale was never consummated because consent of the Public
Utilities Commission was not granted.

*Held:*

1. An appeal from the decree of a single justice, who determined the value
   of the shares, cannot be taken to the Law Court, since the statute provides
   that such appeal shall be heard at the next term of the Supreme Judicial
   Court in the county where the petition is pending.

2. Where a majority of the stockholders of a public service corporation vote
   to sell the entire property and franchises of the company, without previous
   authority from the Public Utilities Commission, or without subsequent
   approval of that board, and the sale is never consummated, such vote does
   not entitle a dissenting minority stockholder to have the value of his shares
   determined and paid for under the provisions of R. S., Chap. 51, Secs. 60 to
   71, both inclusive.

Appeal and exceptions by defendant. This is a petition in an
equitable proceeding under the provisions of Secs. 60 to 71, inclusive,
of Chap. 51 of the R. S., commonly known as the minority stock-
holders act, for the appraisal of the stock of the defendant corpora-
tion held by Albion L. Fenderson, deceased, complainant's testator.
On April 25, 1917, at a special meeting of the stockholders called for

that purpose, a majority of the stockholders voted to sell the entire property and franchises of the corporation. The plaintiff in her capacity as executrix of the will of the said A. L. Fenderson dissented from such vote of the majority of the stockholders, and brought the petition instituting these proceedings, alleging that the vote to sell had been taken without any previous authority from the Public Utilities Commission, or without subsequent approval by said commission, hence a nullity. The defendant filed a motion to dismiss plaintiff's bill, which motion was dismissed by order of the court, and defendant excepted. · A hearing was had upon complaint, answer, replication, evidence and admissions, and the sitting Justice sustained the bill, from which finding the defendant appealed. Appeal dismissed. Exceptions sustained.

Case is fully stated in the opinion.

*McLean, Fogg & Southard,* for plaintiff.

*Frank W. Butler,* for defendant.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, WILSON, DEASY, JJ.

PHILBROOK, J. The plaintiff in this bill in equity is the executrix of the last will and testament of her husband, Albion L. Fenderson, who, at the time of his decease, owned 2151 shares of the capital stock of the defendant company. A special meeting of the stockholders of the company was held on the twenty-fifth day of April, A. D. 1917 to act upon the following matters:

"1. To see if the stockholders will vote to sell to the Franklin Power Co., Inc., all its property, franchises and permits and if so, the terms and conditions of the sale.

2. To see if the stockholders will authorize the proper officers to make an application for and in behalf of said company to the Public Utilities Commission for authority to make such a sale."

Upon a majority ballot it was voted:

"To sell to the Franklin Power Co., Inc. all the property rights and franchises of the company subject to the outstanding bonds of the company amounting to $114,000 all of which outstanding bonds the said Franklin Power Co. Inc. assumes and agrees to pay for the sum of one dollar."

The plaintiff in her representative capacity as owner of 2151 shares of the capital stock of the defendant company voted "No", but there

were 4801 shares voting "Yes". The plaintiff duly dissented from the vote and filed her dissent in accordance with the provisions of R. S., Chap. 51, Sec. 60 et seq.

The statute just referred to is commonly known as the minority stockholder's act and is designed to protect the interests of minority stockholders in corporations when the majority votes to dispose of its franchises, entire property, or any of its property, corporate rights or privileges essential to the conduct of its corporate business and purposes, otherwise than in the ordinary and usual course of business. Section 61 of the act provides:

"If any stockholder in any corporation which shall vote to sell, lease, consolidate or in any manner part with its franchises, or its entire property, or any of its property, corporate rights or privileges essential to the conduct of its corporate business and purposes, otherwise than in the ordinary and usual course of its business, shall vote in the negative and shall file his written dissent therefrom with the president, clerk or treasurer of such corporation within one month from the day of such vote, the corporation, in which he is a stockholder may within one month after such dissent is so filed, enter a petition with the Supreme Judicial Court, sitting in equity, in the county where it held its last annual meeting, in term time or in vacation, setting forth in substance the material facts of the transaction, the action of the corporation thereon, the names and residences of all dissenting stockholders whose dissents were so filed, making such dissenting stockholders parties thereto, and praying that the value of the shares of such dissenting stockholders may be determined, and for other appropriate relief."

Section 62 of the act provides that if the corporation should fail to enter the petition mentioned in Section 61, then the dissenting stockholder, within certain statutory time, may enter such petition and prosecute the same, making the corporation party defendant. In the case at bar, the corporation did not file its petition and on July 16, 1917, the plaintiff filed her petition under the provisions of statute just referred to. Her dissent was dated May 19, 1917 and served on the treasurer of the corporation May 21, 1917. The time within which the corporation could file its petition, under the provisions of Section 61, just above quoted, expired on June 21, 1917. So much of the statute as gives the minority stockholder the right to file petition reads thus:

"If any such corporation shall fail to enter such petition as afore-said, any stockholder dissenting as aforesaid may within one month thereafter enter such petition and prosecute the same, making such corporation party defendant."

Assuming, but not deciding, that the words "within one month thereafter" means within one month after the expiration of the time allowed for filing petition by the corporation, the steps taken by the plaintiff, so far as dates are concerned, were proper. Her petition was ordered returnable on the second Tuesday of September, 1917, which was September 11th of that year. The cause did not come on for hearing until April 16, 1920, and the decree of the sitting Justice who determined the value of the shares was dated June 21, 1920. The record does not disclose the date when the decree was entered and filed in court, but on October 11, 1920, the defendant took an appeal "to the next Law Court to be held in the district where said cause was pending." This appeal was valueless and void, because Section 64 of the act from which we have been quoting provides that an appeal from a decree determining the value of the shares shall be heard at the next term of the Supreme Judicial Court where such petition is pending, and where, at the request of either party, the issue may be submitted to a jury. The appeal to this court, therefore, is not properly here, cannot be considered, and must be dismissed.

The long silence between the return day of the petition in Septem-ber, 1917 and the date of hearing, April 16, 1920 may, and probably is accounted for by reason of the fact that the defendant sought the necessary consent of the Public Utilities Commission to make the sale which had been previously voted. By stipulations annexed to the record, it will appear that the report of the Public Utilities Com-mission for 1918, pages 112-120 inclusive, may be referred to as part of the record. We there learn that the defendant and other corpora-tions kindred and allied in their purposes and business were seeking consolidation and for this purpose the defendant company was desirous of making the sale indicated in the vote. Public hearings were held before the commission on October 18, 1917, and on Decem-ber 5-6, 1917. The decision of the commission is dated December 20, 1917 in which that tribunal said that authority to sell would be granted only upon certain conditions. It is evident that these con-ditions were not carried out and that no sale was made because in the bill of exceptions, allowed by the Justice in the court below and to

which no objection appears on the part of the plaintiff's counsel, we find the statement that no sale was made or could be made in accordance with the preliminary vote.

This raises the crucial question with reference to the bill of exceptions. The defendant claims that the vote to sell having been passed without any previous authority from the Public Utilities Commission or without subsequent approval by said commission was a mere nullity and without any legal force and was not such a vote as the statute contemplates as the foundation for the valuation of stock by a dissenting stockholder.

The Justice sitting in equity held to the contrary and in effect decided that such vote was the vote contemplated by the R. S. of the State giving minority stockholders a right to have an appraisal of their stock, notwithstanding the fact that the Public Utilities Commissoin refused to permit a sale in accordance with the vote so passed.

This question has never before been presented to this court and we find no precedent elsewhere upon which to base a ruling, but reason, good conscience and equity lead us to decide that the ruling below was error and that the exceptions should be sustained. It is the sale and not the vote to sell which gives the minority dissenting stockholder the right to have his stock appraised. If a corporation by majority vote should decide to sell and subsequently for good reason rescind that vote it cannot be reasonably held that the Legislature intended such vote to give minority dissenting stockholders the benefits conferred by the statute under consideration. A fortiori when the vote to sell proves to be a nullity and incapable of execution the dissenting minority stockholder's rights cannot be held to have accrued under the statute.

It is urged by the plaintiff that the exceptions lie to an interlocutory decree but as our decision makes final disposition of the case, the exceptions may be entertained and disposed of as we have now done.

It follows that the bill is unavailing and entry in the court below should be made dismissing the same but we do not allow costs to either party.

*Appeal dismissed.*
*Exceptions sustained.*
*Decree below annulled, new decree*
*to be executed in accordance*
*with this opinion.*